**HARCREST INTERNATIONAL, LTD.**

v.

**M/V ZIM KEELUNG, Zim Container Service, and Searail, Inc.**

**Civ. A. No. 86–2195.**

United States District Court, E.D. Louisiana.

Jan. 28, 1988.

Roderick M. McFaull, Leach & Paysse, New Orleans, La., for plaintiff, Harcrest Intern., Ltd.

James L. Schupp, Jr., Terriberry, Carroll & Yancey, New Orleans, La., for third party plaintiff, Zim Container Service.

John J. Broders, Jones, Walker, Waechter, Poitevent, Carrier & Denegre, New Orleans, La., for third party defendant, Intermodal Transp. Services, Inc.

J. Warren Gardner, Jr., Christovich & Kearney, New Orleans, La., for defendant, Searail, Inc.

F.A. Courtenay, Jr., Courtenay, Forstall, Grace & Hebert, New Orleans, La., for defendant, Great American Ins. Co.

HEEBE, Chief Judge.

This cause came on for hearing January 13, 1988 on the motion of third-party defendant, Intermodal Transportation, Inc., to dismiss the complaint as it pertains against itself.

The Court, having considered the record, the arguments of counsel, and the memoranda submitted by the parties, is now fully advised in the premises and ready to rule. Accordingly,

IT IS THE ORDER OF THE COURT that the motion to dismiss of third-party defendant, Intermodal Transportation Services, Inc., be, and the same is hereby, DENIED.

---

## REASONS

This action involves cargo (shirts), belonging to Harcrest International, Ltd. ("Harcrest"), shipped from Pusan, Korea to New Orleans, Louisiana by Zim Container Service ("Zim"). From New Orleans, the shirts, remaining in Zim's container, were transported via a tractor trailer, owned and operated by Searail, Inc. ("Searail"), to Union, Mississippi. However, on or about June 24, 1985, while in route from New Orleans to Union, the shirts were allegedly damaged by fire.

On May 23, 1986, Harcrest filed suit in this Court under both Rule 9(h) of the Federal Rules of Civil Procedure and Title 49 U.S.C. §§ 10103, 11707, 10730 (formerly 49 U.S.C. § 20(11)) of the Interstate Commerce Act. Named as defendants were Zim and Searail. Zim subsequently filed a cross-claim against Searail on June 13, 1986.

On April 15, 1987, Zim, pursuant to Rule 14(c) of the Federal Rules of Civil Procedure, impleaded both Great American Insurance Co. ("Great American"), Searail's insurer, and Intermodal Transportation Services, Inc. ("Intermodal"), alleged by Zim to have assumed Searail's liabilities as its successor. (Intermodal denies it assumed this particular contingent liability from Searail). In paragraph VIII of its impleader, Zim tendered both Great American and Intermodal as direct defendants, who were, therefore, directly liable, to Harcrest, plaintiff in the principal action, under Rule 14(c) of the Fed.R.Civ.P. In this 14(c) impleader, Zim prayed for judgment in its favor against the third-party defendants or, in the alternative, in favor of the original plaintiff and against the third-party defendants, for the full amount of Harcrest's claim.

On December 16, 1987, this Court granted Zim's motion to dismiss its third-party complaint against Intermodal. On January 21, 1988, this Court vacated that dismissal.

Now Intermodal moves this Court to dismiss that third-party complaint on the grounds that "there is no maritime jurisdiction over this particular claim. Thus, the 14(c) tender was and continues to be improper." R.II, 59.

Harcrest filed this suit against Searail under both Rule 9(h) of the Fed.R.Civ.P. (admiralty designation) and the Interstate Commerce Act. This Court without question has jurisdiction over Searail and the claims asserted against it. However, Intermodal argues that because any claims against Searail (and itself as successor) are non-maritime, Rule 14(c) is inappropriate to implead itself into this action.

It is not clear that any and all claims arising out of this action against Searail must be non-maritime. However, without so deciding, and for purposes of this motion only, the Court will assume, as Intermodal argues, that the claims against Searail are non-maritime.

On the other hand, it is clear that Harcrest's claim against Zim is maritime. And it was Zim, not Searail, who has impleaded Intermodal. The question, therefore, is whether a defendant to a maritime action (Zim) may implead and tender to the plaintiff, through Rule 14(c) of the Fed.R.Civ.P., a third-party action and defendant therein, where that third-party action is non-maritime? Put another way, may Rule 14(c) be used to implead a non-admiralty third-party action into an admiralty action? The Court holds that it may.

The primary case supporting Intermodal's position, extensively relied upon in its memorandum, is *McCann v. Falgout Boat Co.*, 44 F.R.D. 34 (S.D.Tex.1968), which was decided after the merger of the civil and admiralty procedure rules. In *McCann*, a seaman brought an admiralty claim against his employer, a shipowner, for a broken hand. Pursuant to Rule 14(c), the shipowner attempted to implead the plaintiff's doctor for a malpractice claim resulting from his treatment of plaintiff's hand. Judge Noel denied the impleader, reasoning that:

> [t]here can be no non-maritime impleader in an action where the jurisdiction of the district court is based exclusively upon the maritime nature of the plaintiff's claim for relief—absent independent, *and perhaps* admiralty, jurisdiction over

the third-party or the subject matter of the third-party complaint. (Emphasis added).

*Id.* at 41.

According to this reasoning, because there was no independent federal jurisdiction over the shipowner's malpractice claim, there could be no impleader of that claim. However, in the action before this Court, there is an independent federal jurisdictional basis for the claims against Searail (and, therefore, Intermodal). The claims against Searail are brought under the Interstate Commerce Act. This Court has jurisdiction over those claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). Because there exists an independent jurisdictional basis over the impleaded claims, even if not in admiralty, *McCann's* reasoning is not applicable.

*McCann* further distinguished itself from the case now before this Court when Judge Noel explained that the impleaded claim did not state a claim arising from the "same *maritime* transaction, occurrence, or series of transactions or occurrences." (Emphasis original). *McCann,* 44 F.R.D. at 42. In *McCann,* the alleged malpractice was distinct in time and location from the injury which occurred aboard the ship. However, in this action, all of Harcrest and Zim's claims arise out of the destruction of cargo; clearly, this was a single occurrence.

It should be noted that the *McCann* opinion has been termed "undesirable." C. WRIGHT & A. MILLER, 6 FEDERAL PRACTICE AND PROCEDURE § 1465(E) at 349 (1971). It has been criticized extensively. 3 J. MOORE'S, W. TAGGART & J. WICKER, FEDERAL PRACTICE para. 14.36 (2d ed. 1979); Lander, By Slight of Rule, Admiralty Unification and Ancillary and Pendent Jurisdiction, 51 Tex.L.Rev. 50, 63 n. 55 (1972); Comment, *Admiralty Practice After Unification:* Barnacles on the Procedural Hull, 81 Yale L.J. 1154 (1972); and the American Law Institute, which explained that:

[S]ince the unification of admiralty and civil procedure the doctrines of ancillary and pendent jurisdiction will permit joinder or impleader in any case in which the transaction or occurrence involved gives rise to both maritime and non-maritime claims. The decision to the contrary in *McCann* ... takes too restrictive a view of the purposes of unification and of the rules adopted to implement unification.

C. WRIGHT & A. MILLER, 6 FEDERAL PRACTICE AND PROCEDURE § 1465(E) at 349 (1971), *citing* American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, Official Draft at p. 228 (1969).

The criticisms of *McCann* implore district courts to allow the type of impleader sought therein. Because these criticisms desire the impleader not only of state actions over which there is no jurisdictional basis, but also actions which arguably are based upon distinct occurrences, those criticisms would urge this Court, *a fortiori,* to allow Zim's 14(c) impleader and tender to Harcrest of those claims.

In addition, Intermodal cites *McCann's* only progeny, also authored by Judge Noel. *Stinson v. S.S. Kenneth McCay,* 360 F.Supp. 674 (S.D.Tex.1973), held that where a court has no independent jurisdiction over any impleaded claim, the impleader cannot be joined with the principal action. In *Stinson,* not only was there no independent jurisdictional basis, but the impleaded cause of action, like that in *McCann,* did not arise out of the same set of facts as the main cause of action. Therefore, the distinctions and criticisms of *McCann* set forth above apply to *Stinson* with equal force and accuracy.

This District Court, in a similar procedural context, has faced this issue before. In *Gauthier v. Crosby Marine,* 87 F.R.D. 353 (E.D.La.1980) the plaintiff filed suit under Rule 9(h) against two defendants, Crosby Marine and Dixie Oil Tools ("Dixie"). Crosby Marine filed a cross-claim against Dixie. Plaintiff's claim against Dixie was then dismissed; therefore, Crosby Marine's claim against Dixie could "be maintained only, if at all, as a third-party demand." *Id.* at 354. It was agreed by all parties that Crosby Marine's claim against Dixie lacked independent jurisdictional grounds.

In allowing the doctrine of ancillary jurisdiction to extend to Crosby Marine's third-party action against Dixie, the *Gauthier* Court, Judge Cassibry presiding, felt "compelled ... [to allow] a cause of action lacking independent grounds of jurisdiction to be appended under 14(c) to an admiralty claim, as long as it passes the traditional 'same claim' test used for ancillary jurisdiction under Rule 14(a) impleader." *Id.* at 355.

In *Joiner v. Diamond M. Drilling Co.,* 677 F.2d 1035 (5th Cir.1982), the Fifth Circuit apparently removed any impediments to ancillary jurisdiction over 14(c) impleaders. In *Joiner,* a seaman's widow filed an admiralty action against her late husband's employer, who impleaded a third-party with a non-admiralty cause of action. The main admiralty action was subsequently settled. The Fifth Circuit held that it would not retain ancillary jurisdiction over the non-maritime impleader which remained pending after the settlement of the principal action. However, *Joiner* addressed the issue of whether ancillary jurisdiction is applicable to a 14(c) impleader. The *Joiner* court specifically stated that because the rules of admiralty and civil procedure have merged, there is no impediment to the exercise of ancillary jurisdiction over state law claims appended to admiralty claims. *Id.* at 1040. It further "held" that a "third-party claim lacking independent grounds of jurisdiction may be appended to an admiralty action and is cognizable in federal court under the doctrine of ancillary jurisdiction as long as the ancillary claim arises out of the same core of operative facts as the main admiralty action." *Id.* at 1041.

In the litigation at hand, all claims, including any against Searail and Intermodal, arise out of one single occurrence: an alleged fire which caused damage to Harcrest's cargo. Because the complaint was filed under this Court's admiralty jurisdiction, Rule 14(c) is a proper method of impleading any third-party action which arises out of the "same core of operative facts as the main admiralty action." *Joiner,* 677 F.2d at 1041.

It is not necessary that this Court find an independent jurisdictional basis for Harcrest and Zim's claims against Searail and Intermodal since *Joiner* clearly permits ancillary jurisdiction over a 14(c) impleader. Accordingly,

IT IS THE ORDER OF THE COURT that the Motion to Dismiss of Intermodal Transportation Services, Inc., be, and the same is hereby, DENIED.